Lee H. Peck v. Commissioner. Ruth E. Peck v. Commissioner. Lee H. Peck and Ruth E. Peck v. Commissioner.
Lee H. Peck v. Commissioner
Docket Nos. 29749, 29750, 29751.
United States Tax Court
1952 Tax Ct. Memo LEXIS 160; 11 T.C.M. (CCH) 683; T.C.M. (RIA) 52203; June 26, 1952
Richard Katcher, Esq., 1130 B. F. Keith Bldg., Cleveland, Ohio, for the petitioners. James A. Scott, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax as follows: Doc.
No.
1947
1948
29749
Lee H. Peck
$147.66
29750
Ruth E. Peck
398.33
29751
Lee H. Peck and Ruth
E. Peck
$644.76 The only issue for decision is whether amounts received in 1947 and 1948, pursuant to an agreement dated September 22, 1945, were income or amounts realized on a sale of stock. Findings of Fact The petitioners are husband and wife. They filed their returns for 1947 and 1948 with the collector of internal revenue for the 18th District of *161 Ohio. F.W.F. Corporation was organized under the laws of Ohio in 1944. Six hundred ninety-six shares of its stock were outstanding on September 22, 1945, at which time the petitioners owned 120 of those shares which had cost them $12,000. Ray and Koop Ferwerda invented a "Gradall" machine for moving material and received a patent thereon in May 1944. They granted to F.W.F. Corporation, on May 17, 1944, a license to manufacture machines under that patent. F.W.F. Corporation did not have the financial backing needed to manufacture the machines under the patent, and the Ferwerdas and the other stockholders decided to allow Warner & Swasey Company to do the manufacturing. Warner & Swasey Company insisted that all rights of F.W.F. Corporation under the patent be extinguished. Ray and Koop Ferwerda entered into an agreement with the other stockholders of F.W.F. Corporation on September 22, 1945, under which the other stockholders agreed to surrender their shares for one-third of the royalties to be received from Warner & Swasey Company to which the Ferwerdas would transfer an exclusive license to manufacture the machines. The petitioners, pursuant to that agreement, endorsed their *162 shares and delivered them to a bank. They thereby ceased to be stockholders of F.W.F. Corporation. The latter cancelled its license agreement. The Ferwerdas transferred an exclusive license to manufacture under their patent to Warner & Swasey Company, and the latter agreed to pay certain royalties to the bank, two-thirds for the Ferwerdas and one third for the former stockholders of F.W.F. Corporation. The petitioners were entitled to receive and received 120/1728ths of those royalties, or $1,344 for 1947 and $2,400 for 1948. The Ferwerdas were sole owners of the patent at all times material hereto. The Commissioner, in determining the deficiencies, added $243.43 to the income of each petitioner for 1947 and $1,542.86 to their joint income for 1948 with the explanation that their share of income from the Ferwerda Trust was taxable under section 22 (a). All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioners contend that they sold their F.W.F. Corporation stock and $1,344 and $2,400 received by them in 1947 and 1948 represented a return of a part of the cost of that stock. If those amounts were from the sale of their *163 stock they would not represent income and the Commissioner makes no contrary argument. He denies, however, that the stock was sold. He held, in determining the deficiencies, that parts of those amounts were income from "the Ferwerda Trust" and he stated, when the trial began, that the petitioners exchanged their stock for a trust certificate of unascertainable value, the certificate takes the basis of the stock, that basis is amortizable over the remaining life of the patent, and the excess received in each year is income. He apparently abandoned that reasoning as unsound, for the argument advanced in his brief is that "receipts by the petitioners from their jointly-owned fractional interest in a patent, after an allowance for depreciation, constituted taxable income." The evidence is clear that the petitioners never owned any interest in the patent. It was owned at all times by the inventors, the Ferwerdas. Warner & Swasey Company was unwilling to contract for less than an exclusive license to manufacture under the patent and, to permit the Ferwerdas to grant such a license, the other stockholders surrendered their stock, leaving the Ferwerdas, as the only stockholders, in position *164 to have the corporation give up its non-exclusive license and then to grant the exclusive license to Warner & Swasey Company for royalties. The petitioners did not grant the license and they had no interest in the patent on which depreciation could be allowed. The Ferwerdas acquired the petitioners' interest in F.W.F. Corporation and caused that corporation to surrender its non-exclusive license. The Ferwerdas then, as owners of the unlicensed patent, granted the license to Warner & Swasey Company and had to pay a part of the royalties as the price of the stock to the Ferwerdas. The bank acted as an intermediary. The Ferwerdas, who had formerly owned only 120/696ths of the stock, received two-thirds of the royalties and the other former stockholders, who had owned 576/696ths of the stock, received one-third of the royalties. The net result was that these petitioners disposed of their stock for an unascertainable price equivalent to 120/1728ths of the royalties to be paid by Warner & Swasey Company. Those payments were amounts realized by the petitioners from the sale of their stock. Cf. . Decisions will be entered under Rule 50.